OPINION OF THE COURT
Jones, J.
Where a defendant in a criminal proceeding has unwittingly been represented by a layman masquerading as an attorney but in fact not licensed to practice law, his conviction must be set aside without regard to whether he was individually prejudiced by such representation. The right to assistance of counsel, guaranteed by both the Federal and the New York State Constitutions, demands no less.
These four criminal cases reach us in the same procedural context. Each defendant has sought to vacate his conviction pursuant to CPL 440.10 on the ground that he was denied effective assistance of counsel. Their claims stem from the fact that each was represented in his underlying criminal action by one Albert Silver, a person who was not, and had never *292 been, admitted to the Bar of this State or of any other jurisdiction and who had mot completed law school or otherwise satisfied the prerequisites for the practice of law.[1]
Defendant Felder was convicted after a jury trial of robbery in the first degree and grand larceny in the second degree.[2] Silver, though originally retained by Felder, appeared as his assigned counsel during the course of that trial. In unrelated proceedings Silver was also assigned to represent defendant Tucker and he was apparently retained by defendant Wright. These two defendants entered guilty pleas on Silver’s advice— Tucker to criminal sale of a dangerous drug in the third degree; Wright to rape in the third degree — which were the result of Silver’s negotiations with the District Attorney’s office. Finally, defendant Davis, also represented by Silver as assigned counsel,[3] was convicted after a jury trial of arson in the third degree.
On posttrial discovery of Silver’s status as an imposter each defendant moved to set aside his conviction on the ground that representation by a person masquerading as an attorney constituted a per se violation of his constitutional right to assistance of counsel. Defendant’s motions were denied by the lower courts. Each court below recognized that representation by unlicensed counsel constituted error but nonetheless denied defendant’s applications after determining that Silver’s representation did not contribute to the defendants’ convictions and that the acknowledged error was thus harmless beyond a reasonable doubt.
In a single opinion, with two Justices dissenting, the Appellate Division affirmed the denial of the motions made by Felder, Tucker and Wright. Like the lower courts, the Appellate Division employed a harmless error analysis to support its disposition. The denial of defendant Davis’ motion was *293 subsequently affirmed by the Appellate Division, without opinion. For the reasons which follow we reverse.
We first address the contention of the District Attorney of Nassau County that "the Sixth Amendment’s use of the term 'counsel’ may not, historically, be synonymous with 'attorney at law’ ”.[4] By this argument, the District Attorney seeks to distinguish cases involving the deprivation of "assistance” of counsel. It is his submission that the question of denial of effective representation is not the same as whether representation, per se, must be by a licensed attorney. The District Attorney urges that, while a deprivation of "assistance” of counsel may require automatic reversal, a defect in the status of "counsel” should not similarly result in a per se rule requiring reversal but should instead be judged in terms of its prejudicial effect on the defendant. In his view the affirmed findings that there was effective representation should conclude the matter.
We reject this contention. Counsel, as the word is used in the Sixth Amendment[5] can mean nothing less than a licensed attorney at law. A lay person, regardless of his educational qualifications or experience, is not a constitutionally acceptable substitute for a member of the Bar. That this is the proper interpretation of the term is reinforced by the decisions of other courts, in proceedings factually similar to the cases at bar, in which it has been expressly held that "counsel” means a duly licensed and qualified attorney (People v Cox, 12 Ill 2d 265, 269; Higgins v Parker, 354 Mo 888). Moreover, numerous Federal courts dealing with the not unrelated issue of the right of a criminal defendant to choose to be represented by a lay person have consistently held that the right to counsel means the right to an attorney. (See, e.g., United States v Wilhelm, 570 F2d 461; United States v Wright, 568 F2d 142 *294 [and cases cited therein]; Turner v American Bar Assn., 407 F Supp 451, affd sub nom. Taylor v Montgomery, 539 F2d 715; affd sub nom. Pilla v American Bar Assn., 542 F2d 56.) These decisions are based on sound historical analysis. Turner v American Bar Assn. (407 F Supp 451, 474, supra), sets forth the proper perspective from which to interpret the word counsel: "For centuries prior to the enactment of the Sixth Amendment, the English forerunner of the American lawyer was called or invited to practice for a Court only after the Court had satisfied itself that a person was fit to practice by virtue of his character and/or training. On the American side of the ocean, this practice continued throughout the colonial, revolutionary and post-revolutionary era of our history. Although standards for admission were not all uniform and were not always very stringent, the tradition of admission upon qualification continued to exist from even the earliest times of the American legal experience. This Court cannot find even a suggestion in the history of the Common Law after its primeval inception or in the history of the American lawyer that the word 'counsel’, as used in the Sixth Amendment, was meant to include a layman off the street without qualification as to either training or character.”
We join these cases in holding that counsel is indeed synonymous with attorney at law and conclude that inasmuch as these defendants were not represented by an attorney they were quite literally denied their right to assistance of counsel. We perceive no difference between an absolute deprivation of representation and "representation” by an unlicensed lay person — in both instances defendant is denied the right that the Sixth Amendment was designed to guarantee, the right to representation by an attorney.[6]
We turn now to the major thrust of the People’s argument: that defendants’ representation by Silver, albeit error of constitutional significance, was nonetheless, in the unique circum *295 stances of each of these cases, harmless error beyond a reasonable doubt.
The Appellate Division (61 AD2d 309, 312), correctly recognizing that all errors which violate the Constitution do not call for automatic reversal (Harrington v California, 395 US 250), applied the following standard: "The test of due process in such an instance is not whether the defendant had an attorney, licensed or unlicensed, but whether under all of the circumstances his conviction was obtained in such a manner as to be offensive to the common and fundamental idea of what is fair and right (see People v Carnivale, 3 Ill App 3d 443).” Within this framework the Appellate Division (p 314) reviewed the record in each case and concluded that "Silver represented each defendant ably, diligently, competently and consciously; there is no reasonable possibility that his infirmity * * * in any way contributed to, their convictions.”
We conclude that harmless error analysis is not applicable to these cases.
As we stated in People v Crimmins (36 NY2d 230, 237) an error of constitutional magnitude requires reversal of a criminal conviction unless it is demonstrated "that there is no reasonable possibility that the error might have contributed to defendant’s conviction and that it was thus harmless beyond a reasonable doubt (Chapman v. California, 386 U. S. 18; Fahy v. Connecticut, 375 U. S. 85)”. While the burden imposed by this standard is certainly an exacting one, both this court and the Supreme Court have held that, in particular circumstances, Federal constitutional error may be harmless. (Harrington v California, 395 US 250, supra; People v Almestica, 42 NY2d 222.)
Harmless error analysis is not, however, available in all instances of constitutional error. There are some errors which operate "to deny [an] individual defendant his fundamental right to a fair trial [in which event], the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant’s conviction.” (People v Crimmins, 36 NY2d 230, 238, supra; Chapman v California, 386 US 23, supra.) Among such errors is the denial of the constitutional right to assistance of counsel.
There can be no doubt that the right to assistance of counsel is an essential ingredient in our system of criminal jurisprudence, rooted deeply in our concept of a fair trial *296 within the adversarial context. It is "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty” (Johnson v Zerbst, 304 US 458, 462) and as such has been made applicable to the State by reason of the Fourteenth Amendment (Gideon v Wainwright, 372 US 335).
It is precisely this fundamental nature of the right that renders harmless error analysis inapplicable. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.” (Glasser v United States, 315 US 60, 76.) Notions of prejudicial impact, overwhelming evidence of guilt and the like, which are the underpinnings of the constitutional harmless error doctrine, are significant in the context of trial errors, e.g., the admission of improperly seized evidence (People v Almestica, 42 NY2d 222, supra) or the improper admission of the confession of a codefendant who did not take the stand (Harrington v California, 395 US 250, supra). A denial of the right to assistance of counsel, however, not unlike prosecutorial misconduct, misconduct on the part of the Trial Judge or denial of a public trial, invalidates the trial. As the Supreme Court has recently said, "this Court has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.’ Chapman v. California, supra [386 US], at 23.” (Holloway v Arkansas, 435 US 475, 489.)
In view of the nature of the disposition we make of the appeals in these cases we do not reach or consider the other grounds for reversal of his conviction advanced on behalf of defendant Davis.
For the reasons stated the orders of the Appellate Division should be reversed, the motions to vacate the judgments granted and new trials ordered.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur with Judge Jones.
In each case: Order reversed, motion to vacate the judgment of conviction granted and a new trial ordered.

. Silver had apparently maintained an illegal practice of law in the Nassau County area for approximately 12 years, including at one time appointment as a City Attorney. On May 24, 1976 Silver pleaded guilty to attempted unlicensed practice of law.

. Felder’s appeal from this conviction was affirmed by both the Appellate Division and this court (People v Felder, 39 AD2d 373, affd 32 NY2d 747). A subsequent appeal to the United States Supreme Court was dismissed for want of a substantial Federal question (Felder v New York, 414 US 948).

. Information concerning Silver’s status as either assigned or retained counsel is provided merely as background data. Our disposition of these cases in no way hinges on whether Silver was in fact retained or assigned — a circumstance which we find irrelevant for present purposes.

. The District Attorney purports to find support for this proposition in language extracted from the Supreme Court’s decision in Faretta v California (422 US 806, 826-827). It is to be noted that the historical discussion referred to in Faretta was set forth in support of the court’s holding that the right to self-representation is an independent constitutional right, implied by the structure of the Sixth Amendment and supplemented by the right to counsel. The discussion did not focus on the question presented here — the meaning of the term counsel.

. The Sixth Amendment provides in part that ”[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.” (See, also, Constitution of the State of New York, art 1, § 6: "[I]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel”.)

. We note that our present holding is limited to the circumstances presented, i.e., where a criminal defendant is unknowingly represented by a person who is not, and has never been, admitted to practice in this or any other jurisdiction. We do not address the effect the defendant’s knowledge of the imposter’s status may have, nor do we determine that representation, either knowing or unknowing, by a person who has been disbarred or who is licensed in another jurisdiction but not in New York, is necessarily violative of the Federal and State Constitutions. Finally, our ruling grounded on the constitutional provisions is, of course, limited to criminal cases, and we make no comment on the application of its rationale to the civil side of the law. (Cf. Dunn v Eickhoff, 35 NY2d 698.)